IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:16-CV-751-LY |
| | § | CAUSE NO. 1:04-CR-14-LY-1 |
| | § | |
| WALTER DEWAYNE MEADOWS, | § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court in the above-styled and numbered cause are Walter Dewayne Meadow's Motion to Vacate under 28 U.S.C. § 2255 filed June 24, 2016 (Dkt. No. 56), Memorandum of Law in Support of Motion to Vacate filed June 28, 2017 (Dkt. No. 60), Government's Answer to Defendant's Motion to Vacate, Set Aside, or Correct Sentence filed August 2, 2017 (Dkt. No. 63), Reply to the Government's Response to the Motion to Vacate filed September 13, 2017 (Dkt. No. 65), Briefing Responsive to the Court's Order filed August 30, 2018 (Dkt. No. 69), Government's Response and Motion to Deny Petitioner's Request for 28 U.S.C. § 2255 Relief filed October 15, 2018 (Dkt. No. 72), and Reply to the Government's October 15, 2018 Response filed October 25, 2018 (Dkt. No. 73). Having reviewed the motion, responses, replies, briefing, the applicable law, and the entire record in this cause, the court will grant the motion to vacate for the reasons to follow.

I.  **BACKGROUND**

"When compliance with the U.S. Sentencing guidelines was still understood to be mandatory, district courts were required to impose an extended term of incarceration on so-called career offenders." *Cross v. United States*, 892 F.3d 288, 291 (7th Cir. 2018); *see also United States v. Booker*, 543 U.S. 220, 234 (2005) (recognizing the Guidelines were "binding on

judges" and "carried the force and effect of law"). The Guidelines mandated an enhanced sentence for so-called "career offender[s]" with "at least two prior felony convictions of either a crime of violence or a controlled substance offense." *See* U.S.S.G. § 4B1.1(a). As relevant here, the Guidelines defined a crime of violence as including any offense "involv[ing] conduct that present[ed] a serious potential risk of physical injury to another." *Id.* at 4B1.2(a)(2).[1] This catch-all phrase defining a crime of violence is known as the "residual clause."

Petitioner Walter Dewayne Meadows pleaded guilty on April 28, 2004, to one count of Felon in Possession of a Firearm, without the benefit of a plea agreement. *See* 18 U.S.C. § 922(g)(1). The presentence-investigation report calculated Meadows's base-offense level as 24, because of two prior felony convictions for "crimes of violence" under the residual clause. Meadows was convicted under Texas law of sexual assault of a child and attempted murder, which resulted in a mandatory Guideline range of 77-96 months' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011, 19.02. On July 8, 2004, this court sentenced Meadows to a term of imprisonment of 84 months.

---

[1] The Guideline provisions in 2004 read as follows:

§ 4B1.1. Career Offender
   (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

§ 4B1.2. Definitions of Terms Used in Section 4B1.1
   (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
   (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
   (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Since this court sentenced Meadows, several legal developments drastically reshaped federal sentencing. First, the Supreme Court held the mandatory nature of the Sentencing Guidelines to be unconstitutional. *See Booker*, 543 U.S. at 234. Then, in *Johnson v. United States*, the Supreme Court held the residual clause in the Armed Career Criminal Act —which enhanced a sentence based on previous convictions that "otherwise involves conduct that presents a serious potential risk of physical injury to another"—to be unconstitutionally vague. *See Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2563 (2015); 18 U.S.C. § 924(e)(2)(B). And, in *Welch v. United States*, the Supreme Court held that *Johnson* announced a new substantive rule retroactively applicable to cases on collateral review. *See Welch*, ___ U.S. ___, 136 S. Ct. 1257 (2016).

The *Johnson* decision lead to a wave of cases challenging criminal statutes with similar or identical language as that struck down in *Johnson*, including challenges to the residual clause of the career-offender sentencing guideline. *See* U.S.S.G.§ 4B1.1, 4B1.2(a)(2). One such decision reached the Supreme Court. In *Beckles v. United States*, the petitioner challenged his sentence, which was enhanced under the career-offender guideline *after* the Guidelines were made advisory by the Supreme Court's decision in *Booker*. *See Beckles*, ___ U.S. ___, 137 S. Ct. 886, 892 (2017). The Supreme Court held that because the Sentencing Guidelines were advisory at the time of Beckles' sentencing, and "merely guide[d] the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," *Johnson* did not apply to Beckles's case. *Beckles*, 137 S. Ct. 886, 892 (2017). As the Court explained, "our cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range . . . ." *Id.* at

893. Thus, the Sentencing Guidelines' advisory—as opposed to mandatory—status meant the career-offender guideline was not subject to the same vagueness challenge raised in *Johnson*.

Importantly, the Supreme Court left for another day the question of whether the principles announced in *Johnson* would render unconstitutional a sentence imposed under the pre-*Booker* career-offender guideline, when imposing a Guideline sentence was statutorily mandated. *See id.* at 894–95 (repeatedly stating that the "advisory Guidelines" do not implicate the twin concerns of the vagueness doctrine); *id.* at 903 n.4 (Sotomayor, J., concurring) ("The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*]—that is, during the period in which the Guidelines *did* 'fix the permissible range of sentences'—may mount vagueness attacks on their sentences.").[2]

## II. APPLICATION

The issue squarely before the court today is whether a sentence imposed pre-*Booker*—at a time when this court was statutorily required to apply a Guideline sentence—may now be attacked on vagueness grounds. Meadows filed a motion to vacate his sentence under Section 2255. *See* 28 U.S.C. § 2255. A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may ask the sentencing court to "vacate, set aside or correct the sentence." *Id.* at § 2255(a). This motion must be made within one year "from the latest of" a set of enumerated events. *See* 28 U.S.C. § 2255(f). One such event that tolls the usual one-year limitation is where the Supreme Court "newly recogiz[es]" a right and making that right "retroactively

---

[2] Justice Sotomayor's use of "at least" in her concurrence suggests that she may be of the view that the distinction between mandatory and advisory guidelines that dictated the result in *Beckles* would also dictate the opposite result in a case with a sentence imposed pre-*Booker*.

4

applicable to cases on collateral review." *Id.* at § 2255(f)(3). This period begins when the Supreme Court declares a new right, not when courts first acknowledge that right to be retroactive. *See Dodd v. United States*, 545 U.S. 353, 356–60 (2005).[3] Thus, the timeliness of Meadow's motions hinges on whether the right he "assert[s] was initially recognized by" *Johnson*. 28 U.S.C. § 2255(f)(3).

Courts are split on the question of whether a sentence enhanced by the career-offender guideline—imposed when the Guidelines were mandatory—is a right recognized by *Johnson* and thus, retroactively applicable to petitioners like Meadows. On one side of the issue, some courts have found that the "new right" recognized by *Johnson* and made retroactive in *Welch* is not the same right asserted by Meadows (and petitioners like him), and as a result their Section 2255 petitions are untimely. The Fourth, Sixth and Eleventh Circuits, along with a number of district courts, have taken this approach. *See Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017); *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017); *United States v. Greer*, 2018 WL 721675 (11th Cir. 2018).[4] These courts narrowly construe the term "right" as used in Section 2255 to encompass only the precise holding of the Supreme Court case at issue. Such a holding means the "right" recognized by *Johnson* is that a sentence enhanced under the residual clause of the Armed Career Criminal Act is unconstitutional and must be vacated. Under this approach, only petitioners challenging sentences imposed under the Armed Career Criminal Act's residual

---

[3] The retroactivity determination is not limited to the Supreme Court and may be made by "district and appellate courts" for purposes of timeliness under Section 2255(f)(3). *See Butterworth v. United States*, 775 F.3d 459, 464 (1st Cir. 2015).

[4] For district court decisions, *see United States v. Waters*, 2018 WL 287933 (W.D. Pa. Jan. 4, 2018); *Hernandez v. United States*, 2017 WL 6520500 (W.D. Wis. Dec. 20, 2017); *United States v. Colasanti*, 2017 WL 4273300 (D. Ore. Sept. 26, 2017); *Washington v. United States*, 2017 WL 5036640 (N.D. Tex. Sept. 26, 2017); *Zamora v. United States*, 2017 WL 4247337 (D.N.M. Sept. 27, 2017).

5

clause may take advantage of the tolling provision of Section 2255(f)(3). *See, e.g., Raybon*, 867 F.3d at 630 (extension of *Johnson* to the mandatory Guidelines would recognize a "new right"); *Brown*, 868 F.3d at 302 ("*Beckles* confirms that the Supreme Court has yet to recognize a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to [Armed Career Criminal Act's] residual clause.").

On the other hand, courts have determined that the statutory language of Section 2255(f)(3) should be read more broadly. The First Circuit concluded that:

> Congress in [section] 2255 used words such as "rule" and "right" rather than "holding." Congress presumably used these broader terms because it recognizes that the Supreme Court guides the lower courts not just with technical holdings but with general rules that are logically inherent in those holdings, thereby ensuring less arbitrariness and more consistency in our law.

*Moore v. United States*, 871 F.3d 72, 82 (1st Cir. 2017); *see also Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018) (holding that *Johnson* recognized "the right to be resentenced on the ground that the vague (yet mandatory) residual clause unconstitutionally fixed their terms of imprisonment"). These opinions conclude that challenges to sentences imposed under then-mandatory Guidelines rely on "exactly the right" *Johnson* recognized. *Moore*, 871 F.3d at 83.[5] These courts looked to the reasoning of *Johnson*—that a person has a right not to have his sentence *dictated* by the unconstitutionally vague language of the mandatory residual clause—to hold that petitioners like Meadows are seeking to invoke the "precisely the right" *Johnson* recognized. *See Cross*, 892 F.3d at 294.

---

[5] *See also United States v. Roy*, 2017 WL 4581792 (D. Mass. Oct. 13, 2017); *Reid v. United States*, 252 F. Supp. 3d 63 (D. Mass. 2017); *United States v. Parks*, 2017 WL 3732078 (D. Colo. Aug. 1, 2017); *United States v. Tunstall*, 2017 WL 2619336 (S.D. Ohio June 16, 2017) (decided prior to the Sixth Circuit opinion in *Raybon*); *United States v. Mock*, 2017 WL 2727095 (E.D. Wash. June 23, 2017) (finding that *Johnson* applies, but that the error was harmless); *In re Hoffner*, 870 F.3d 301 (3d Cir. 2017) (allowing a successive habeas petition after finding that petitioner had satisfied lower *prima facie* standard).

This court finds the arguments of the First and Seventh Circuits to be persuasive. And this conclusion is bolstered by two recent Supreme Court cases holding a functionally identical residual clause to be unconstitutionally vague. *See Sessions v. Dimaya*, ___ U.S. ___, 138 S. Ct. 1204, 1223 (2018); *see also United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319, 2323 (2019). In *Dimaya*, the Supreme Court considered a challenge to the language of Section 16(b) of Title 18 of the United States Code, which is essentially identical to the language in Section 924(e) that Court struck down in *Johnson*.[6] In deciding whether the language of Section 16(b) was also unconstitutionally vague, the Court did not start its analysis anew, but instead noted that "*Johnson* tells us how to resolve this case." *Dimaya*, 138 S. Ct. at 1223. The Court explained that "*Johnson* is a straightforward decision, with equally straightforward application here." *Id.* at 1213. Thus, even though *Dimaya* involved a challenge to an immigration-removal statute, which incorporated by reference Title 18's statutory definition of "crime of violence," the Supreme Court found that the reasoning of *Johnson* dictated the result. Because the statutory language challenged in *Dimaya* was nearly identical to the language of the residual clause of the Armed Career Criminal Act which *Johnson* struck down, the Court found the reasoning of *Johnson* governed the outcome of *Dimaya*. *Id.* at 1213–16. The Court's description of *Dimaya* being the result of a "straightforward application" of *Johnson* greatly bolsters the argument that if the outcome in a case challenging the pre-*Booker* mandatory Guidelines is likewise dictated by a similarly straightforward application of *Johnson*, then that outcome is the result of an application of the "right" recognized in *Johnson*, and the claim is properly brought under section 2255(f)(3).

---

[6] *Compare* 18 U.S.C § 16(b) ("crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"), *with* 18 U.S.C. § 924(e)(2)(B) ("otherwise involves conduct that presents a serious potential risk of physical injury to another").

Because this court was required to apply a Guideline sentence to Meadows, this case implicates the same concerns expressed in *Johnson*. This is because the mandatory Guidelines had "the force and effect of laws" under which "no departure [would] be legally permissible." *Booker*, 543 U.S. at 234. Prior to *Booker*, the Guidelines "fixed" the sentences, just like the Armed Career Criminal Act fixed Johnson's sentence. And because the residual clause in the mandatory Guidelines is identically-worded to the one in the Armed Career Criminal Act, a similarly straightforward application of *Johnson* renders the sentence imposed here infirm, as it was based on a vague mandatory Guideline. *See Moore*, 871 F.3d at 82 (finding the residual clause of mandatory guidelines "is not clearly different in any way that would call for anything beyond a straightforward application of [*Johnson*]").[7]

In sum, the Court concludes that Meadow's petition is timely, and further, that a straightforward application of *Johnson* dictates that a sentence enhanced under Sections 4B1.1 and 4B1.2(a)(2) of the career-offender guideline during the pre-*Booker* period when the Guidelines were mandatory, violates the Due Process clause.

Because the residual clause is not the only way in which a sentence may be enhanced, the remaining question is whether Meadows's sentence might otherwise have been enhanced under the elements clause of the guidelines. *See* U.S.S.G. § 4B1.2(a)(1) ("'crime of violence' means any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another"). And Meadows must have committed two such crimes of violence.

---

[7] In making this determination, the court recognizes that another district judge in the Western District of Texas came to a different conclusion—albeit prior to *Dimaya* and *Davis*—in two cases. *See Ben v. United States*, 2018 WL 327367, No. 1:16-CV-802-SS (W.D. Tex. Jan. 8, 2018); *Given v. United States*, 2018 WL 327368, No. 1:16-CV-515-SS (W.D. Tex. Jan. 8, 2018). After *Dimaya*, one district judge in the Western District of Texas came to the same conclusion as this court today. *See Zuniga-Munoz*, No. 1:02-cr-134-JRN (Dkt. No. 79).

The Government initially did not argue that Meadows's prior convictions, sexual assault of a child and attempted murder, qualify as "crimes of violence" as defined by section 4B1.2(a)(1). *See* TEX. PENAL CODE ANN. § 22.011, 19.02. The Government changed course in its later briefing, arguing that attempted murder qualifies as a crime of violence. The Government, however, makes no such argument that sexual assault of a child under Texas law is contains the elements of a crime of violence as defined by Section 4B1.2(a)(1). Instead, the Government seems to argue that it could prove Meadows's sexual-assault conviction suffices under a modified categorical approach. To do so, a court looks to records of the original conviction, referred to as the "*Shepard*" documents, to see if there are facts set out that would allow this court to determine whether Meadows's state convictions qualify as crimes of violence under the elements clause. *United States v. Conde-Castaneda*, 753 F.3d 172, 176 (5th Cir. 2014). The Government has requested *Shepard* documents on Meadow's sexual-assault conviction, but has not yet received them. "If no record speaks plainly, then the court will not be able to satisfy *Taylor*'s demand for certainty when determining whether a defendant was convicted of a generic offense." *Roy*, 2017 WL 4581792, at *8 (internal quotations omitted) (quoting *United States v. Faust*, 853 F.3d 39, 59 (1st Cir. 2017) and *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2257 (2016)). Because Meadows's conviction records are not available, this court cannot make the necessary determination, and the court must conclude that Meadow's prior sexual-assault conviction was not an eligible conviction for enhancing Meadows's sentence under the elements clause of Section 4B1.2(a)(1). The Guidelines require *two* prior felony convictions. Because the court has determined that one of only two convictions the government relies on does not qualify as a felony conviction, the court does not consider whether Meadows's attempted murder qualifies as a crime of violence under section 4B1.2(a)(1).

### III. CONCLUSION

Applying *Johnson*, which the Supreme Court has made retroactive to cases on collateral review, the Court finds that the residual clause of the career-offender guideline, made mandatory by the Sentencing Reform Act, violates the Due Process clause. Because the only way Meadow's prior sexual-assault conviction could have enhanced his sentence under the Guidelines was by operation of the residual clause, his sentence of 84 months violated the Constitution. Further, because his claim is based on the right newly recognized in *Johnson*, which was made retroactively applicable to cases on collateral review, and he filed his petition within one year of *Johnson*, his petition is timely. Accordingly,

**IT IS ORDERED** that Walter Dewayne Meadow's Motion to Vacate under 28 U.S.C. § 2255 filed June 24, 2016 (Dkt. No. 56) is **GRANTED**.

SIGNED this ___9th___ day of July, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE